Pauline E. CHRISTENSEN and Phyllis Gohman, Appellants,

v.

The STATE OF IOWA, the University of Northern Iowa, and the State Board of Regents, Appellees.

No. 77–1071.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1977.

Decided Sept. 14, 1977.

Susan D. Ross, American Civil Liberties Union Foundation, New York City, for appellants; Kathleen W. Peratis, Marjorie M. Smith, Joel Gora, New York City, Thomas L. Staack, David J. Dutton, Waterloo, Iowa, on briefs.

John W. Sabbath, Cedar Falls, Iowa, for appellees; Harold B. Strever, Jr., Wallace B. Reed, Cedar Falls, Iowa, and Richard C. Turner, Atty. Gen., Des Moines, Iowa, on brief.

Vella M. Fink, EEOC, Washington, D. C., for amicus curiae, Equal Employment Opportunity Commission; Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Assoc. Gen. Counsel, Charles L. Reischel, Asst. Gen. Counsel, Washington, D. C., for amicus curiae, on brief.

Before LAY and BRIGHT, Circuit Judges, and MILLER, Judge.*

BRIGHT, Circuit Judge.

Appellants, representatives of a class of female clerical employees at the University of Northern Iowa (UNI), commenced this action under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., against UNI, the Iowa State Board of Regents, and the State of Iowa, contending that UNI's practice of paying clerical workers, who are exclusively female, less than the amount it pays physical plant workers, who are predominantly male, for jobs of equal value to the University constitutes illegal sex discrimination in compensation. The district court[1] rejected appellants' Title VII claims,[2] and appellants bring this timely appeal. For reasons stated below, we affirm.

UNI is a state university located in Cedar Falls, Iowa. Prior to 1974, the university determined the wage scales for nonprofessional jobs by reference to wages paid for similar work in the local labor market. Although all jobs at UNI are open to persons of both sexes, the nonprofessional jobs tend to be segregated by sex. All the employees in UNI's clerical department are women and the great majority of the employees in its physical plant department are men. The labor market in the surrounding community is similarly segregated. As a result, UNI's pay system perpetuated the traditional disparity between the wages paid to women and those paid to men.

In 1974, the State Board of Regents instituted a pay scheme, known as the Hayes System, under which compensation was to be based on an objective evaluation of each job's relative worth to the employer regardless of the market price. By establishing "internal equity" among university jobs, the Hayes System, in theory, should have eliminated the long-standing discrimination in compensation against employees in job categories dominated by women.

The Hayes System evaluated all jobs in terms of thirty-eight factors and assigned "points" for each factor. Jobs with similar points were placed in the same "labor grade," regardless of the actual content of the job. The pay range for each labor grade was determined by reference to the market rates in the locality for similar jobs. The system then divided each labor grade into sixteen pay steps to provide increases based on length of service.

The system did not operate exactly as anticipated. Because the local job market paid higher wages for physical plant jobs than the beginning pay under the system, the university modified the proposed system to the extent of providing for advanced step starting pay for many of the physical plant employees, but not for beginning clerical employees. As a result, some physical plant employees, mostly male, continued to be paid more than clerical employees, all female, despite equivalent seniority and jobs in the same labor grade.[3]

Appellants, who are clerical employees at UNI, argue that UNI's practice of paying male plant workers more than female clerical workers of similar seniority, where the jobs are of equal value to UNI, constitutes sex discrimination and violates Title VII, 42 U.S.C. § 2000e et seq. They claim that the higher wages are not necessary to attract

---

* JACK R. MILLER, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Chief Judge Edward J. McManus, United States District Court for the Northern District of Iowa.

2. Appellants initially asserted claims under the Equal Pay Act of 1964, but those claims were abandoned before the district court.

3. The following, without being exhaustive, were included in physical plant occupations:

| | | |
|---|---|---|
| carpet layer | bus driver | mechanic |
| mail carrier | electrician | plasterer |
| tree trimmer | locksmith | carpenter |
| parking enforce-<br>ment officer | upholsterer | plumber |

Clerical positions included, among others:

| | | |
|---|---|---|
| account clerk | computer operator | typist |
| key entry operator | library assistant | secretary |
| telephone operator | data technician | mail clerk |

workers to physical plant jobs, but are, instead, merely a continuation of a long history of sex discrimination in the local job market. UNI argues that the higher wages for plant employees are justified because they are based on local market wage surveys that reflect comparable wages for similar work.

UNI contends, and the district court agreed, that appellants did not establish entitlement to relief under Title VII because appellants failed to show that work performed by clerical employees was substantially similar to that performed by physical plant employees. UNI claims that the last sentence of 42 U.S.C. § 2000e–2(h), commonly known as the Bennett Amendment, requires a showing of "equal work" in claims of sex discrimination in compensation. Appellants contend that the Bennett Amendment does not place this limitation on Title VII.[4]

▮ We need not resolve the conflict presented over the interpretation of the Bennett Amendment for we are convinced

that, apart from the Bennett Amendment, appellants failed to make a *prima facie* case.[5]

Appellants have failed to demonstrate that the difference in wages paid to clerical and plant employees rested upon sex discrimination and not on some other legitimate reason. The evidence shows that UNI paid higher wages to plant workers because wages for similar jobs in the local labor market were higher than the wages established under the Hayes System. The university drew no distinction between male and female employees in the plant department.

Appellants contend that UNI's policy violates Title VII by perpetuating wage differences resulting from past discrimination. They argue that long-standing discriminatory practices in the local job market, which channeled women workers into a small number of jobs, resulted in an over-supply of workers and depressed wages in those jobs.[6] Therefore, UNI's reliance in part upon prevailing wage rates in determining

---

4. The Bennett Amendment provides in pertinent part:

> It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer *if such differentiation is authorized by the provisions of section 206(d) of Title 29* [the Equal Pay Act]. [Emphasis supplied].

The revelant provisions of the Equal Pay Act referred to in the Bennett Amendment read as follows:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex * * *. [29 U.S.C. § 206(d)(1).]

5. Construction of the Bennett Amendment becomes relevant upon a finding that plaintiffs-appellants established a *prima facie* case of sex discrimination. The district court, however, made no such finding but discussed the application of the Bennett Amendment, "assuming plaintiffs [appellants] have made a prima facie case of sex discrimination in compensation * * *."

By way of distinction to the facts presented in this case, we might note that if the record had established that the university relied upon prevailing community wage rates in setting pay scales for male-dominated jobs but paid less than community wages for jobs primarily staffed by women, we would necessarily reach the Bennett Amendment issue.

6. In support of this thesis, appellants cite the following reports: Laws, *Psychological Dimensions of Labor Force Participation by Women*, in Equal Employment Opportunity and the AT&T Case (Wallace ed. 1976); Bergman, *The Effect on White Incomes of Discrimination*, Journal of Political Economy (March-April 1971); Cohen, *Sex Differences in Compensation*, 6 Journal of Human Resources (Fall 1971); Sommors, *Occupational Rankings for Men and Women by Earnings*, Monthly Labor Review 50 (August 1974).

beginning pay scales for jobs of equal worth to the university serves to carry over the effects of sex discrimination in the marketplace into the wage policies of the college.

█ This argument misconstrues the purposes of Title VII. The federal policy embodied in Title VII is that individuals shall be entitled to equal *opportunities* in employment on the basis of fitness and without discrimination because of race, color, religion, sex, or national origin. This policy is reflected in the statute's title "Equal Employment Opportunity," as well as in the preamble to Executive Order No. 11478, its counterpart in the area of federal employment:

> It has long been the policy of the United States Government to provide equal opportunity in Federal employment on the basis of merit and fitness and without discrimination because of race, color, religion, sex, or national origin. [Exec. Order No. 11478, 3 C.F.R. 803 (1966–1970 compilation), *reprinted in* 42 U.S.C. § 2000e app., at 10297 (1970).]

The policy behind Title VII was described by the Supreme Court in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), as follows:

> What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification. [*Id.* at 431, 91 S.Ct. at 853.]

The Court reiterated that policy in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):

> The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens. [*Id.* at 800, 93 S.Ct. at 1823.]

█ Equality of opportunity is not at issue here. Instead, appellants seek a construction of Title VII that may establish a *prima facie* violation of that Act whenever employees of different sexes receive disparate compensation for work of differing skills that may, subjectively, be of equal value to the employer, but does not command an equal price in the labor market. Appellants' theory ignores economic realities. The value of the job to the employer represents but one factor affecting wages. Other factors may include the supply of workers willing to do the job and the ability of the workers to band together to bargain collectively for higher wages. We find nothing in the text and history of Title VII suggesting that Congress intended to abrogate the laws of supply and demand or other economic principles that determine wage rates for various kinds of work. We do not interpret Title VII as requiring an employer to ignore the market in setting wage rates for genuinely different work classifications.[7]

The district court made these crucial findings, not questioned on appeal:

> 4. Plaintiffs have made no showing that the work of clerical employees is substantially equal to that of physical plant employees.
>
> 5. Non-faculty job openings at the University are posted and circulated in an open manner which does not favor men over women.

> \* \* \* \* \* \*

> 7. Plaintiffs are not locked in to clerical positions by any University policy or practice.

The record further discloses that the university, by adoption of the Hayes System, sought to remove pay disparities between occupations staffed by women and those occupations principally staffed by men. As we have noted, full adoption of the system

---

7. Here we do not have an employer relying on "market price" as a basis for paying women lower wages than men for doing substantially equal work—a violation of the Equal Pay Act.

*See, e. g., Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719, 726 (5th Cir. 1970).

became unrealistic economically, for some physical plant jobs commanded a higher wage scale in the community than those jobs were worth to the university under the Hayes System's evaluation. Thus, some disparities in wage scales persisted regardless of the values assigned work.

Although the university did not fully achieve its commendable goals by using the Hayes System, its failure in some particulars does not constitute a Title VII violation. The trial court specifically found that these higher pay-scale jobs, as well as all physical plant jobs, were open equally to all qualified applicants, men or women. This finding is not attacked.

Thus, on these undisputed crucial facts, the district court correctly concluded that "plaintiffs have failed to prove by a preponderance of evidence that they have been discriminated against in terms of compensation because of sex."

Accordingly, we affirm.

JACK R. MILLER, Judge, concurring.

As the majority opinion points out, appellees modified the "Hayes System" to the extent of providing for advanced step starting pay for many of the physical plant employees, but not for beginning clerical employees. Therefore, under the circumstances of this case, it seems to me that appellants established a prima facie case of sex discrimination *unless* the last sentence of 42 U.S.C. § 2000e–2(h), the "Bennett Amendment," applies. I am satisfied that it does apply,[8] so that a showing of "equal work" was required of appellants. The finding of the district court that no such showing was made is clearly supported by substantial evidence. Accordingly, I agree that the judgment of the district court should be affirmed.

8. Such is the opinion of five circuits: *Calage v. University of Tenn.*, 544 F.2d 297 (6th Cir. 1976); *Laffey v. Northwest Airlines, Inc.*, 12 EPD ¶ 11,216 at 5609, Nos. 74–1791 and 75–1334 (D.C.Cir. Oct. 20, 1976); *Orr v. Frank R. MacNeill & Son, Inc.*, 511 F.2d 166 (5th Cir.), *cert. denied*, 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975); *Ammons v. Zia Co.*, 448 F.2d 117 (10th Cir. 1971); *Schultz v. Whea-*

*ton Glass Co.*, 421 F.2d 259 (3d Cir.), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). Three district courts in this circuit are also of this view: the court below, *Howard v. Ward County*, 418 F.Supp. 494 (D.N.D.1976), and *Di Salvo v. Chamber of Commerce of Greater Kansas City*, 416 F.Supp. 844 (D.Mo. 1976).