**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO (AFSCME); the Civil Service Employees Association, Inc., Region I/Local 1000 (CSEA); Rita Wallace, Rachel Braver, Odessa Colvin, Erna Flugh, Dorothy Garage, Laurie Giliberti, Stephen Goldberg, Fred Jordan, Linda Kelly, and Lois Whitley on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**COUNTY OF NASSAU; its County Executive; the Comptroller; the Members of the County Board of Supervisors; and the Members of the Civil Service Commission, Defendants.**

No. CV–84–1730.

United States District Court, E.D. New York.

July 13, 1987.

Joel I. Klein, Onek, Klein & Farr, Washington, D.C., for plaintiffs.

William H. Pauley, III, Snitow & Pauley, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiffs, charging defendants with sex discrimination in compensation, sued under title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). Defendants' motion to dismiss was granted in part and denied in part. *AFSCME v. County of Nassau,* 609 F.Supp. 695 (E.D.N.Y.1985). Several plaintiffs—Rita Wallace, Rachel Braver, Erna Fluhr, Laurie Giliberti, Stephen Goldberg, Fred Jordan, Linda Kelly, and Lois Whitley—now move to be class representatives. Specifically, they seek to represent all Nassau County civil service employees who, since July 28, 1982, have worked in "traditionally female jobs." Plaintiffs define such jobs as those having 70% or more female employees in 1967, when the County implemented its present classification and compensation system. Class certification is sought only on the title VII claims, not on the Equal Pay Act claims. This is because the Equal Pay Act provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought," 29 U.S.C. § 216(b), and "[t]he clear weight of authority holds that Rule 23 procedures are inappropriate for the prosecution of class actions under § 216(b)," *Kinney Shoe Corp. v. Vorhes,* 564 F.2d 859, 862 (9th Cir.1977); *accord Montalto v. Morgan Guaranty Trust Co.,* 83 F.R.D. 150, 151 (S.D.N.Y.1979).

In opposing class certification, defendants make two primary arguments: (1) the proposed class cannot be certified because it includes men, who lack standing to sue for employment discrimination against women; (2) plaintiffs have failed to satisfy the prerequisites to certification contained in Federal Rule of Civil Procedure 23, because (a) there are no questions of law and

fact common to the class as a whole, (b) the claims of the representatives are atypical of the claims of the class as a whole, and (c) plaintiffs will not represent adequately the overbroad class they have framed.

## I. *Standing of Male Plaintiffs*

There are two male plaintiffs, Stephen Goldberg and Fred Jordan. Their Equal Pay Act claims were dismissed in a prior order, *AFSCME v. County of Nassau*, 609 F.Supp. 695, 704 (E.D.N.Y.1985), albeit with leave to replead, *id.* at 705. Counsel for plaintiffs chose not to amend the complaint as to Goldberg and Jordan during the time period fixed by the court, and the only claims currently advanced by those plaintiffs are under title VII.

Stated briefly, Goldberg and Jordan allege that they are underpaid because they work at "traditionally female jobs." Thus, although they are men, they allege that they are victims of the defendants' discrimination against women. At this point, the defendants seek to exclude Goldberg and Jordan as class representatives. Because the court accepts the defendants' contention that Goldberg and Jordan, as men, lack standing to sue for employment discrimination against women, it takes the further step of dismissing their title VII claims for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

In doing so, the court follows *Patee v. Pacific Northwest Bell Telephone Co.*, 803 F.2d 476 (9th Cir.1986), and declines to follow the thoughtful decision rendered ten days earlier in *Allen v. American Home Foods, Inc.*, 644 F.Supp. 1553 (N.D.Ind. 1986). The Supreme Court has approved, in *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972), a reading of title VII that "[t]he use in 42 U.S.C. § 2000e–5 of the language 'a person claiming to be aggrieved' shows a congressional intention to define standing as broadly as is permitted by Article III of the Constitution," *Hackett v. McGuire Brothers, Inc.*, 445 F.2d 442, 446 (3d Cir.1971). *See Stewart v. Hannon*, 675 F.2d 846, 849 (7th Cir.1982). Whether Goldberg and Jordan are persons aggrieved *vel non* will determine whether they have standing to bring a title VII action. *E.g., Waters v. Heublein, Inc.*, 547 F.2d 466, 469 (9th Cir.1976), cert. denied, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977); *Wade v. New York Telephone Co.*, 500 F.Supp. 1170, 1179 (S.D.N.Y.1980); *see Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970) (standing concerns "the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question").

█ It has oft been held that associational rights give rise to cognizable title VII claims. *See, e.g., Stewart, supra*, 675 F.2d at 849–50 (white plaintiff was "person aggrieved" by alleged exclusion of racial minorities); *Waters, supra*, 547 F.2d at 469 (same). That is to say, if Goldberg and Jordan alleged "that they have been denied interpersonal contacts with women," *Patee, supra*, 803 F.2d at 479, they would state a claim under title VII. But, "[i]n fact, most of their co-workers are women." *Id.* They contend that they are aggrieved persons because, but for the defendants' alleged discrimination against women, they would be paid more. Goldberg and Jordan unquestionably "assert their own injuries" and "their own rights." *Allen, supra*, 644 F.Supp. at 1556. The court concludes, however, that these injuries and rights do not place them within the title VII zone of interests, because "[t]he male workers do not claim that they have been discriminated against because they are men," *Patee, supra*, 803 F.2d at 478; *accord Spaulding v. University of Washington*, 740 F.2d 686, 709 (9th Cir.) (male faculty member cannot bootstrap job grievance into title VII claim, even where female faculty members have cognizable claim), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). While there is considerable appeal in *Allen*'s reasoning that "the injuries of the males and females were occasioned by the same ... decision," 644 F.Supp. at 1557; *cf. Oxman v. WLS–TV*, 595 F.Supp. 557, 561 (N.D. Ill.1984) (white Jewish plaintiff

has standing to complain of discrimination against blacks because he alleges comprehensive plan directed at both blacks and Jews), the fact remains that Goldberg and Jordan suffer no injury *qua* men. Unlike the *Allen* court, this court holds that the absence of injury to the men as men is a fatal flaw for title VII purposes.

It may be argued that it is anomalous for title VII plaintiffs to have standing to assert associational rights while lacking standing to assert pecuniary rights. As a matter of public policy, it is perhaps strange that a plaintiff may come to federal court with a complaint that he is losing associational benefits which are hard to quantify, while he is barred from complaining of a loss of easily quantifiable dollars. Title VII, however, focuses on whether the plaintiff suffers discrimination because of who *he* is. Thus, the plaintiffs in *Stewart* and *Waters*, who had standing, were denied the benefits of associating with members of minority groups because *those plaintiffs* were white. Goldberg and Jordan, in contrast, do not contend that they are underpaid because *they* are men. To the contrary, they allege that they are men who are being mistreated because they are being treated like women. As such, they have not stated a claim under title VII. Should this be bad public policy, the remedy is with Congress. In accordance with the reasoning in *Patee*, the court dismisses the title VII claims of Goldberg and Jordan. Accordingly, it is not necessary to reach the question of their suitability as class representatives.

## II. *Rule 23 Criteria*

Under rule 23 of the Federal Rules of Civil Procedure, a class may be certified if all four conditions of rule 23(a) and one of the conditions of rule 23(b) are met. While the shorthand phrases used to describe the four requirements of rule 23(a) are hardly mellifluous, they are used for the sake of convenience: numerosity, commonality, typicality, and adequacy of representation. *See Eirhart v. Libbey-Owens-Ford Co.*, 89 F.R.D. 424, 427 n. 2 (N.D.Ill.1981) ("Because it appears that the battle is clearly lost and that no other terminology is as readily understood, this opinion has reluctantly surrendered purism for expediency.").

Plaintiffs contend that they meet the four requirements of rule 23(a) and the criteria of rule 23(b)(2). The latter provision permits an action to proceed as a class action when

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Defendants challenge plaintiffs' claims of commonality, typicality, and adequacy of representation. Plaintiffs have alleged that Nassau County has approximately 10,000 employees in traditional female job classifications; even if the number will be smaller when male employees are subtracted, it will still be quite large. Accordingly, defendants do not challenge numerosity. Nor, if it is assumed that plaintiffs can meet the other requirements of rule 23(a), do defendants contest the applicability of rule 23(b)(2). Additionally, the defendants' challenge to plaintiffs' ability fairly and adequately to protect the interests of the class is directed solely at the plaintiffs; there is no contention that plaintiffs' current counsel (or the attorneys who represented plaintiffs when this motion was argued) fail the adequacy test.

The starting point for discussion is *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), where, among other things, the Court rejected the "across-the-board rule" enunciated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir.1969). *See* 457 U.S. at 157–58, 102 S.Ct. at 2370. The Fifth Circuit rule had permitted "any victim of racial discrimination in employment [to] maintain an 'across the board' attack on all unequal employment practices alleged to have been committed by the employer pursuant to a policy of racial discrimination." *Id.* at 152, 102 S.Ct. at 2367. After noting that title VII plaintiffs cannot circumvent rule 23's requirements before

gaining class certification, *id.* at 156, 102 S.Ct. at 2369–70 (citing *General Telephone Co. of the Northwest v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980)), *Falcon* explained its rejection of the across-the-board rule:

> We cannot disagree with the proposition underlying the across-the-board rule—that racial discrimination is by definition class discrimination. But the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rules 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove more than the validity of his own claim. . . .
>
> Without any specific presentation identifying the questions of law or fact that were common to the claims of respondent and of the members of the class he sought to represent, it was error for the District Court to presume that respondent's claim was typical of other claims against petitioner by Mexican-American employees and applicants. If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation.

*Id.* 457 U.S. at 157–59, 102 S.Ct. at 2370–71 (footnotes omitted).

Although *Falcon* "pulled in the reins" on the Fifth Circuit rule, *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir.1985), *aff'd*, —— U.S. ——, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the Court did not rule out the possibility of class certification in title VII disparate treatment cases. *See Falcon, supra*, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371; *accord Sheehan v. Purolator, Inc.*, 103 F.R.D. 641, 647 (E.D.N.Y. 1984). "[T]he primary thrust of *Falcon* was that satisfaction of Rule 23(a) requirements may not be *presumed*." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 597 (2d Cir.1986) (emphasis in original).

Against this background, the court examines whether plaintiffs have satisfied the rule 23(a) requirements of commonality, typicality, and adequacy of representation. Commonality and typicality "may be considered together, as they 'tend to merge.'" *Selzer v. Board of Education of City of New York*, 112 F.R.D. 176, 178 (S.D.N.Y.1986) (quoting *Falcon, supra*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13).

■ It is significant that the plaintiffs allege discrimination in *compensation* on the basis of sex. *Falcon*, by contrast, involved an attack on General Telephone's hiring and promotion practices. Whereas hiring and promotion decisions are generally made on an individual basis, it is not disputed that the compensation decisions made by Nassau County are made under a single common plan. At this point, plaintiffs are not obligated to show any more than an inference of discrimination in compensation decisions. *See Avagliano v. Sumitomo Shoji America, Inc.*, 103 F.R.D. 562, 574 (S.D.N.Y.1984). "A motion for class certification is not the occasion for a mini-hearing on the merits. . . ." *Selzer, supra*, 112 F.R.D. at 178.

Even subtracting Goldberg and Jordan from this action, *see supra* Part I, the remaining plaintiffs are long-standing employees of Nassau County, all of whom allege that they are underpaid because they work at traditionally female jobs. While the thousands of potential class members will not be clones of these representatives, "Rule 23 does not require precise, mirror-image identity respecting the injuries caused by a single practice or policy at a single facility," *International*

*Woodworkers of America, AFL–CIO, CLC v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1270 (4th Cir.1981). Nor is there any difficulty in the service of plaintiff AFSCME, the union of the class members, as a class representative. *See, e.g., Clark Equipment Co. v. International Union, Allied Industrial Workers of America, AFL–CIO,* 803 F.2d 878, 880 (6th Cir.1986) (per curiam), *cert. denied,* —— U.S. ——, 107 S.Ct. 1574, 94 L.Ed.2d 765 (1987).

In short, if the named plaintiffs successfully demonstrate the validity of their claims of sex discrimination in compensation, they will benefit the entire class. The theory is the same for all concerned: Nassau County underpays employees who work at traditionally female jobs. The court finds that the plaintiffs have made a sufficient facial showing of commonality and typicality.

The court is unpersuaded by the defendants' argument that the plaintiffs cannot represent the interests of the class adequately. "[W]ith regard to the necessary qualities for the named representative parties, the general standard is that the representatives must be of such a character as to assure the vigorous prosecution ... of the action so that the members' rights are certain to be protected." 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1766, at 302–03 (2d ed. 1986) (footnote omitted). An important element of adequacy—here uncontested—is the class plaintiffs' competence to conduct the litigation. *See Michaels v. Ambassador Group Inc.,* 110 F.R.D. 84, 90 (E.D.N.Y. 1986). Additionally, the court must determine whether the named plaintiffs have interests potentially adverse to those of absent class members, *Shankroff v. Advest, Inc.,* 112 F.R.D. 190, 194 (S.D.N.Y. 1986), as well as "the representative's understanding and involvement in the lawsuit, the willingness to pursue the litigation, [and] the ability to serve as a fiduciary on behalf of the class," *In re LILCO Securities Litigation,* 111 F.R.D. 663, 672 (E.D.N.Y.1986).

 Given the conceded ability of plaintiffs' attorneys, the substantiality of the national labor union that is one of the named plaintiffs, and the evident enthusiasm of the individual named plaintiffs to pursue this lawsuit, the court is satisfied for the time being that the plaintiffs have also met the adequacy requirement of rule 23(a). Of course, should it become apparent later in the progress of this action that any of the prerequisites to class certification is not truly present, the court will entertain a motion for decertification. At this time, the motion for certification of a class is granted. Counsel are directed to appear for a status conference on August 19, 1987, at 4:30 p.m., at which time the court will entertain suggestions regarding the efficient and equitable conduct of this action. *See* Fed.R.Civ.P. 23(d).

SO ORDERED.