Norma SIEGEL, C. Gwendolyn Thomas, Elinore Ehrlich and Lillian R. Dinosfsky, on Behalf of Themselves, Others Similarly Situated, Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK, Defendant.

No. CV–85–2869.

United States District Court, E.D. New York.

May 9, 1989.

Lewis, Greenwald, Kennedy & Lewis, P.C., New York City, for plaintiffs.

Corporation Counsel of the City of New York, New York City by Elisabeth Palladino and Marilyn Richter, for defendant.

## MEMORANDUM AND JUDGMENT OF DISMISSAL

WEINSTEIN, District Judge.

Plaintiffs are attempting, in an imaginative use of federal sex discrimination laws, to force the state to equalize remuneration in public education between elementary and high school principals. Elementary school principals claim the wage differential between elementary and high school principals in the New York City school system constitutes gender discrimination in violation of Title VII of the Civil Rights Act of 1964, made applicable to public employers in 1972. 42 U.S.C. §§ 2000e, *et seq.* The Board of Education of the City School District of the City of New York moves for summary judgment on two grounds. First, the Board contends that because the class is predominately male, plaintiffs fail to make out a prima facie case of discrimination. Second, defendant raises the affirmative defense available under the Bennett Amendment to Title VII that the wage differential was based on factors other than sex. 42 U.S.C. § 2000e–2(h). Defendant's motion for summary judgment must be granted.

### I. FACTS

When the New York City School Board was formed in 1898 there were disparities in wages between male and female teachers and principals, as well as differences in wages between high school and elementary school personnel. In 1900 the New York State Legislature legitimated these disparities when it enacted the Davis Bill setting pay schedules for teachers and administrators. *See* Doherty, *Tempest on the Hud-*

*son: The Struggle for Equal Pay for Equal Work in the New York City Public Schools 1907–11,* 1979 Hist. of Education Q. 413. High school teachers and principals were paid more than elementary school teachers and principals. Men were paid more than women.

Through the efforts of female teachers' organizations the disparity in wages between male and female teachers teaching the same grade level was eliminated in 1911. *See* Doherty, *supra,* at 422. Nevertheless, the differential between high school and elementary school salaries remained, perpetuating the lower wages of female school personnel since most elementary school teachers and principals were female and most high school teachers and principals were male.

In 1947 the New York State Legislature amended the New York Education Law to eliminate the wage differential between high school and elementary school teachers and assistant principals. 1947 N.Y. Laws ch. 778. The disparity in principals' salaries endured.

As of the 1986–87 school year, elementary school principals received salaries ranging from $50,360 to $55,537, depending on the number of staff and students in their school, while their high school counterparts earned from $57,105 to $64,329. 60.5% of the elementary school principals and 77.5% of high school principals were male.

## II. LAW

### A. Title VII

Title VII makes unlawful discrimination in salary based upon sex. The statute provides:

It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation ... because of such individual's ... sex....

42 U.S.C. § 2000e–2(a).

The law requires that the person claiming discrimination be discriminated against. Men have not been permitted to assert a claim that they themselves have been victimized inadvertently by sex discrimination against women. *See Patee v. Pacific Northwest Bell Telephone Co.,* 803 F.2d 476, 478 (9th Cir.1986) (male employees could not maintain Title VII action as persons aggrieved because of sex-based wage discrimination against women); *Spaulding v. University of Washington,* 740 F.2d 686, 709 (9th Cir.1984) (valid sex dicrimination claim of female nursing school faculty member does not allow male nursing school faculty member to "bootstrap" a claim under Title VII); *AFSCME v. Nassau County,* 664 F.Supp. 64 (E.D.N.Y.1987); *Linksey v. Heidelberg Eastern, Inc.* 470 F.Supp. 1181, 1187 (E.D.N.Y.1979) (male plaintiff lacked standing to claim discriminatory employment practices against women). *But see Allen v. American Home Foods, Inc.,* 644 F.Supp. 1553, 1557 (N.D.Ind.1986) (closing of factory because of alleged sex discrimination causing injury to both male and female workers gave rise to male workers' claim under Title VII). In *AFSCME v. Nassau County,* male plaintiffs alleged that they were being underpaid because they worked in "traditionally female jobs." 664 F.Supp. 64, 66 (E.D.N.Y.1987). Judge Glasser held that they had not stated a claim under Title VII.

Title VII ... focuses on whether the plaintiff suffers discrimination because of who *he* is.... [The plaintiffs] do not contend that they are underpaid because *they* are men. To the contrary, they allege that they are men who are being mistreated because they are being treated like women.

*Id.* at 67 (emphasis in original).

There is no theoretical reason why males cannot claim discrimination on account of their own sex where females are unfairly favored. But to permit a class predominately comprised of men to assert that they have been the victims of sex discrimination against women in the same position perverts the purpose of Title VII—to require men and women in the same position to be equally treated. If a majority of the elementary school principals were female and a commensurate percentage of high school principals were male, plaintiffs might have a colorable Title VII claim. Without this

factual basis plaintiffs fail to make out a prima facie case of wage discrimination on the basis of sex.

There is no apparent disparate treatment of men and women principals by the Board. Male and female elementary school principals receive equal pay, male and female high school principals receive equal pay and the board hires both men and women for the two jobs, neither of which has a disproportionately higher number of one sex than the other. Nor can it be contended that the difference in pay between high school and elementary school principals is based upon the proportion of females in each group.

■ Plaintiffs articulate two theories of gender discrimination to circumvent objections to their claim of illegal discrimination. They rely on the conceded extremely broad reach that Congress intended for the statute.

In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the *entire spectrum* of disparate treatment of men and women resulting from sex stereotypes.

*County of Washington v. Gunther*, 452 U.S. 161, 180, 101 S.Ct. 2242, 2253, 68 L.Ed. 2d 751 (1981) (quoting *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978)) (emphasis in original). Based on this principle they argue: first, that they are paid less, not because of their gender, but because of the gender of those they supervise, and second, that the wage differential devalues the elementary school principal position because of the historical perception that elementary schools are traditionally female institutions and their principalships traditionally female jobs.

As to the first theory, plaintiffs assert that a Title VII violation exists where an employee is discriminated against in compensation because of the sex of those he or she supervises. Thus, even though elementary school principals are predominantly male, under plaintiffs' theory they are discriminated against because of their pre-dominantly female elementary school teaching staff.

Extending the statute on this first theory may be justified under some extreme circumstances showing contempt for women workers. That kind of factual pattern does not exist here. Elementary school teachers are paid the same wages as high school teachers.

As to plaintiff's second theory, that the wage differential reflects the historical perception that elementary schools are traditionally female institutions, the mere fact that a lower paid job was "traditionally female" is not enough to establish a Title VII violation. *See American Nurses' Association et al. v. State of Illinois, et al.*, 783 F.2d 716 (7th Cir.1986); *Spaulding v. University of Washington*, 740 F.2d 686 (9th Cir.1984); *Lemons v. City & County of Denver*, 620 F.2d 228 (10th Cir.), *cert. denied* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed. 2d 114 (1980); *Christensen v. Iowa*, 563 F.2d 353 (8th Cir.1977). Courts have rejected the contention that the "mere failure to rectify traditional wage disparities between predominantly male and predominantly female jobs violates federal law." *American Nurses', supra*, at 720.

Even though an employer may be aware that the salary of its employees in "traditionally female jobs" is lower than that of its employees in "traditionally male jobs," "[k]nowledge of a disparity is not the same thing as an intent to cause or maintain it...." *American Nurses', supra*, at 722. Only if there were evidence of intentionally continued wage discrimination after 1972, would liability be imposed. *See Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). Evidence of past discrimination, without a continuing effect, is not enough to prove present intentional discrimination. *See United Air Lines v. Evans*, 431 U.S. 553, 559, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (discriminatory act committed before the passage of Title VII has "no present legal consequences.... [T]he critical question is whether any present *violation* exists.") (emphasis in original). Plaintiffs have not

proffered any evidence of any post-Act discriminatory employment decisions.

Elementary school principals were predominantly female at the turn of the century when the city school system was first created and salary differentials initially instituted—and in the immediate post World War II era due most likely to the exigencies of the war. No evidence suggests that the male dominated job of elementary school principal is viewed as predominantly a job for females. There is no evidence that the school board's present salary schedule perpetuates prior discriminatory employment practices.

The evidence demonstrates that gender discrimination has played no part in the Board's compensation decisions for at least the last forty years. In 1947, the Board approved a law that equalized the wages of teachers and assistant principals employed in the elementary and high schools. This endorsement reflected a desire to eradicate any sex discrimination that flowed from the image of the elementary school as the "female" or inferior institution.

It strains credulity to suggest that in the midst of this effort to achieve equality across the board, elementary school principals' wages were singled out to be the last bastion of sex discrimination in the school system. It is more likely, as the Board persuasively contends, that the Board supported the legislation distinguishing between high school and elementary school principals' pay because it reflected a judgment—whether sound or not—that high school principals should be compensated for their greater responsibilities. Plaintiffs have not submitted evidence to the contrary.

State law enacted in 1963 reaffirmed the policy of higher compensation for high school principals with not only the Board's approval but also the support of the New York City Elementary School Principals Association—a majority of whose members were male. 1963 N.Y. Laws ch. 259. No intent to discriminate or to give present effect to past discrimination has been shown.

## B. Bennett Amendment

Even if plaintiffs' theories of gender discrimination were accepted, defendants have a valid defense under the Bennett Amendment to Title VII. It provides:

It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29 [Equal Pay Act].

42 U.S.C. § 2000e–2(h).

The Equal Pay Act, in pertinent part, provides:

No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to ... a differential based on any other factor other than sex....

29 U.S.C. § 206(d).

The Bennett Amendment incorporated the affirmative defense available under the Equal Pay Act that permits disparate wages if based on "any ... factor other than sex." *See County of Washington v. Gunther*, 452 U.S. 161, 169–77, 101 S.Ct. 2242, 2247–52, 68 L.Ed.2d 751 (1981). The difference in compensation between elementary and high school principals reflects, the Board claims, legitimate differences in the two positions. By withdrawing their claim under the Equal Pay Act, plaintiffs implicitly acknowledged that they cannot prove that elementary and high school principal positions require equal skill, effort and responsibility under similar working conditions—the prerequisite to liability under that Act.

The evidence supports the defendants' claim that the wage differential is based upon factors other than sex. The board determined that the high school principal's

job entailed greater responsibility and effort due to the size of his or her staff and student body, the difficulties associated with supervising adolescents, the larger and more complicated budget and other non-sex factors. These differences legally justify the higher wages for high school as opposed to elementary school principals. Whether the difference is wise as a matter of public policy is not before us.

### III. CONCLUSION

Defendants' motion for summary judgment is granted. The complaint is dismissed without costs or disbursements.

So ordered.