**Paul SIDARI, et al.**

v.

**ORLEANS COUNTY, et al.**

**No. 95–CV–0250A.**

United States District Court,
W.D. New York.

Aug. 26, 1996.

Emmelyn Logan-Baldwin, Rochester, NY, for plaintiffs.

Colleen O'Connell Jancevski, Buffalo, NY, for defendants.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Hugh B. Scott pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), on March 18, 1996. On April 29, 1996, Magistrate Judge Scott filed a Memorandum and Order and Report and Recommendation.

Plaintiffs filed objections to the Memorandum and Order and Report and Recommendation on May 17, 1996. Defendants filed a response on June 20, 1996, and plaintiffs filed a reply thereto on July 19, 1996. The Court heard oral argument on plaintiffs' objections on July 23, 1996.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the district court "may reconsider any pretrial matter under this subparagraph (A), where it has been shown that the Magistrate Judge's order is clearly erroneous or contrary to law." *Id.*

Magistrate Judge Scott made the following rulings in his Memorandum and Order:

(1) denied plaintiffs' motion to consolidate their case with one pending before the Honorable John T. Elfvin, *Gavenda v. Orleans County*, Civ. No. 95–251E;

(2) extended the discovery period to June 28, 1996;

(3) denied plaintiffs' motion for a protective order to prevent further deposition of Paul Sidari; and granted defendants' cross motion to compel the continuation of Paul Sidari's deposition;

(4) ordered defendants to produce certain documents with specific limitations;

(5) denied plaintiffs' motion for a protective order to prevent defendants' mental and physical examination of Paul Sidari;

(6) ordered that the mental examination of Paul Sidari be recorded by audio tape recorder but not the physical examination; and

(7) denied plaintiffs' motion to be paid by defendants for time in prosecuting the case.

The Court has carefully reviewed the submissions of the parties and Magistrate Judge Scott's Memorandum and Order and finds that the rulings were neither clearly erroneous nor contrary to law. Accordingly, plaintiffs' objections to Magistrate Judge Scott's Memorandum and Order are denied.

Pursuant to 28 U.S.C. § 636(b)(1), the Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made.

Magistrate Judge Scott made the following recommendations:

(1) that the Court grant defendants' motion to strike allegations in the complaint that have to do with the rights of inmates and other employees at the Orleans County Jail; and

(2) that the Court deny the motion of Norvin Lee Fowlks, a former inmate at Orleans County Jail, to intervene in the case.

Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Scott's Report and Recommendation, defendants' motion to strike allegations relating to alleged race and sex discrimination and Constitutional rights vio-

lations against inmates and other employees at Orleans County jail is granted and Norvin Lee Fowlks' motion to intervene in this action is denied.

IT IS SO ORDERED.

### Memorandum & Order and Report & Recommendation

SCOTT, United States Magistrate Judge.

This matter has been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) by Hon. Richard J. Arcara in an order dated March 18, 1996. Before the Court are numerous motions relating to various discovery matters, intervention by another party and the transfer and consolidation of this case with *Gavenda v. Orleans County et al.,* Civ. No.95–251 which is currently pending before Hon. John T. Elfvin.

### *Background*

Plaintiff Paul L. Sidari[1] is a white male catholic of Italian ancestry who is employed as a Corrections Officer by Orleans County Sheriff's Department. Although not filed as a class action complaint, plaintiff purports to seek relief on behalf of himself "and other persons similarly situated" for the alleged violation of his (and presumably, their) civil rights.[2] Plaintiff's Amended Complaint sets forth wide ranging allegations alleging discrimination based on race, sex, national origin, and religion.

In addition to money damages (front pay, back pay and benefits), plaintiff seeks injunctive relief "restraining the defendants from maintaining a policy, practice, custom and/or usage of: (a) Discriminating against plaintiff and other persons similarly situated because of national origin, religion, race and/or retaliation for complaining of discrimination/retaliation with respect to compensation, terms, conditions and privileges of employment, including, without intending to limit, hiring, transfer, promotion and pay; and (b) Limiting, segregating and classifying employees of defendants in ways which deprive the plaintiff and other persons similarly situated of equal employment opportunities and otherwise adversely affect their status as employees because of national origin, religion, race or because of having complained of discrimination/retaliation or of having assisted in complaining of employment discrimination/retaliation; and (c) Abusing inmates because of their race and national origin." (See Amended Complaint at ¶ 13.)

As it relates to himself, plaintiff's Amended Complaint alleges that he was discriminated against because of his Italian ancestry (Amended Complaint ¶¶ 27–30, 48, 54, 56, 57, 59, and 81), mostly because of allegedly repeated statements by defendant Dingman referring to plaintiff as "Dago" or that "A Dago is a nigger turned inside out." The sole allegation which appears to relate to plaintiff's religious discrimination claim is another statement by defendant Dingman to the effect that "We don't let Dagos and Catholics in the Masons; you'll have to go to the Knights of Columbus." (Amended Complaint ¶ 29)

Plaintiff's allegations of racial discrimination relate to the alleged abuse of inmates. Once again, most of these allegations are instances in which defendant Dingman allegedly referred to black inmates as "niggers" or by other derogatory phrases. Plaintiff also alleges that defendant Dingman regularly abused inmate Norvin Fowlks by confining him to a cell without a toilet or sink or mattress (Amended Complaint ¶ 19), by squirting Fowlks with a firehose (Amended Complaint ¶ 19) and by enticing Fowlks to perform oral masturbation (Amended Complaint ¶ 20). Plaintiff also alleges that he and another corrections officer (on separate occasions) witnessed defendant Walsh abuse Fowlks by stepping on Fowlks' penis (Amended Complaint ¶ 21). Plaintiff also alleges that defendant Dingman refers to inmates with Spanish surnames as "spics" (Amended Complaint ¶ 23) and that he has "repeatedly given and/or caused to be given inappropriate medications to inmates" and has otherwise denied appropriate medical care to inmates (Amended Complaint ¶ 25).

---

1. Plaintiff Chris Deen Sidari, Paul Sidari's wife, asserts derivative claims.

2. Notwithstanding such allegations, plaintiff's counsel does not argue that plaintiff intended to file this action as a class action.

Among other things, plaintiff also alleges that he was told he was to have nothing to do with Lt. Kathy Gavenda because of her prior discrimination suits (Amended Complaint ¶¶ 26 and 47); that defendant Dingman directed that he go home and change a white shirt even though defendant Green told him to wear the white shirt (Amended Complaint ¶ 37); that defendant Dingman directed him to return to work sooner than he wanted to after being hospitalized for kidney stones even though other officers were available to work (Amended Complaint ¶¶ 38–41); defendant Dingman accused plaintiff of talking with Zina Baker, a part-time Corrections Officer who lives with a black man (Amended Complaint ¶ 43); plaintiff alleges that Baker has been discriminated against because she lives with a black man (Amended Complaint ¶ 44); that in retaliation for his complaints, defendant Walsh has referred to plaintiff as "the canary" or "Pauline the canary" (Amended Complaint ¶ 59), that defendants Dingman, Walsh and Emerson have retaliated by refusing to communicate with plaintiff as their work would require it (Amended Complaint ¶ 62); that someone scratched plaintiff's new van which was parked near the jail (Amended Complaint ¶ 64); that defendant Dingman accused plaintiff of complaining to the "mafia" about plaintiff being discriminated against because he was Italian (Amended Complaint ¶ 79); that defendant Green told William Breckenridge that if he had anything to do with it he would not have any women working in the Sheriff's Department (Amended Complaint ¶ 80).

Since filing his formal complaint with the New York State Division of Human Rights, plaintiff alleges that the following discrimination/retaliation has taken place: defendants Dingman and Walsh have refused to save empty food cans for plaintiff's Cub Scout project (Amended Complaint ¶ 68); Dingman has removed, or caused the removal, of batteries from jail smoke detectors (Amended Complaint ¶ 69); a series of credit card applications were sent to plaintiff or his wife by someone making it appear as if plaintiff (and/or his wife) were inmates at the jail (Amended Complaint ¶ 70); plaintiff has received prank phone calls (Amended Complaint ¶ 71); plaintiff has been denied the ability to attend training seminars (Amended Complaint ¶¶ 72–73, 78, 93); that when plaintiff became ill during a shift on June 18, 1994 defendant denied that plaintiff's illness was due to poor working conditions (Amended Complaint ¶¶ 74–76); that plaintiff's childhood friend, Lt. Stillwell, (who is also of Italian decent) was removed from his position with the Sheriff's Department (Amended Complaint ¶¶ 81–82); that someone placed a computer entry on the jail computer to the effect that "Pauline the Canary Sidari" had been arrested for rape (Amended Complaint ¶ 83); that defendant Green has accused plaintiff of making the false computer entry (Amended Complaint: ¶ 87); that plaintiff, unlike other officers, was not notified of a time for a flu shot (Amended Complaint ¶ 91); and that defendant Dingman was looking for information to use against plaintiff such as whether he was punctual (Amended Complaint ¶ 94); that defendant Dingman wants to remove plaintiff from "A" shift (Amended Complaint ¶ 98); and that he has been threatened with being subject to "discipline" for some unidentified conduct on his part (Amended Complaint ¶¶ 101–104); that defendants canceled his health insurance (Amended Complaint ¶ 105); that he has been falsely accused of improperly removing fire report documents from the jail (Amended Complaint ¶¶ 106–107); that defendants have enticed other employees to change their testimony regarding plaintiff's allegations (Amended Complaint ¶¶ 108–109); that plaintiff was passed over as a fill-in cook at the jail (Amended Complaint ¶ 110); that defendants have caused other employees to shun him because of his complaints (Amended Complaint ¶ 111); that he as been denied pay while attending depositions in connection with this case (Amended Complaint ¶ 113); and that he has been denied overtime pay for work as the Fire Inspector for the jail (Amended Complaint ¶ 114).

Plaintiff alleges that due to defendants' conduct he suffers, or has suffered, anxiety and depression (Amended Complaint ¶ 42), loss of sleep, uncontrollable shakes (Amended Complaint ¶ 52), severe headaches and mucus colitis (Amended Complaint ¶ 63), and internal bleeding (Amended Complaint

¶ 102). Plaintiff asserts causes of action under Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, § 1983 of the Civil Rights Act of 1871, the New York Civil Rights Law, and common law defamation.

### Pending Motions

A. *Motions Relating to Consolidation or Transfer of the Case to Judge Elfvin*

1. Plaintiff's Motion to Consolidate this Case with *Gavenda v. Orleans County* 95–251(# 48) [3]

2. Plaintiff's Motion to Transfer the Case to Judge Elfvin (# 72)

B. *Motions Relating to Striking Allegations from the Complaint*

1. Orleans County Defendants' Motion to Strike (# 55)

2. Defendant Dingman's Motion to Strike (# 58)

C. *Motion of Norvin Fowlks to Intervene* (# 64)

D. *Plaintiff's Motion to Extend Discovery Deadline* (# 124)

E. *Motions Relating to the Continuation of the Deposition of Plaintiff*

1. Plaintiff's Motion for a Protective Order (# 75)

2. Orleans County Defendants' Cross–Motion to Compel (# 113)

F. *Motions Relating to the Scheduling of Depositions*

1. Plaintiff's Motion for a Protective Order dated October 4, 1995(# 65)

2. Plaintiff's Motion for a Protective Order dated February 9, 1996(# 85)

3. Plaintiff's Amended Motion for a Protective Order dated February 12, 1996(# 86)

4. Orleans County Defendants' Cross–Motion to Compel (# 105)

G. *Motions Relating to the Production of Documents*

1. Plaintiff's Motion to Compel the Production of Documents (# 81)

2. Orleans County Defendants' Cross–Motion for a Protective Order (# 110)

H. *Motions Relating to the Physical and Mental Examination of Plaintiff*

1. Orleans County Defendants' Motion to Compel (# 95)

2. Defendant Dingman's Motion to Compel (# 102)

3. Plaintiff's Cross–Motion for a Protective Order (# 127)

A. *Motions Relating to Consolidation or Transfer of the Case to Judge Elfvin*

Plaintiff Sidari has filed a Motion to Consolidate this Case with *Gavenda v. Orleans County,* Civ. No. 95–251(# 48). Plaintiff's counsel, Emmyln Logan–Baldwin, also represents the plaintiff in *Gavenda.* A similar motion was presented to Judge Elfvin on behalf of the plaintiff in *Gavenda.* On October 19, 1995, Judge Elfvin issued an Order which lauded the attempt to economize the time, money and efforts of the parties, but noted that he lacked jurisdiction to direct what "may be adduced or useable in a case pending before another judge. . . ." Judge Elfvin concluded by ordering "liminally—that any and all discovery had in either of said two cases may be used, according to regular and ordinary standards, in the instant case." Subsequently, counsel for plaintiff in the instant case filed a motion to transfer the case to Judge Elfvin (# 72).

Because plaintiff's counsel interpreted Judge Elfvin's October 19, 1995 order as having effectively granted pretrial consolidation of the two cases, defendants in *Gavenda* filed various motions seeking clarification of the order. Judge Elfvin referred the clarification motions, along with other pretrial matters, to this Court. By order dated April 12, 1996, this Court held that Judge Elfvin's October 19, 1995 Order did not consolidate the two cases for pretrial purposes. Upon review of the arguments on this issue, this

---

**3.** References in parenthesis reflect the docket number of the pleading on the Court's docket.

Court once again concludes that consolidation of these two cases is not appropriate.

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[w]hen actions involving a common question of law or fact are pending before the court," the court may order consolidation of the cases or of any or all the matters in issue in the action. The party moving for consolidation bears the burden of showing the commonality of factual and legal issues. *In Re Repetitive Stress Injury Litigation,* 11 F.3d 368 (2d Cir.1993). The Court must examine the "special underlying facts" with "close attention" before ordering consolidation. *Id.,* at 373. Finally, even where commonality is established, although consolidation may enhance judicial economy, considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial. *Id.* citing *Johnson v. Celotex Corp.,* 899 F.2d 1281 (2d Cir.) cert. denied, 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990).

As this Court stated in the April 12, 1996 order in *Gavenda,* even if consolidation were procedurally possible, inasmuch as there are substantial differences between the underlying claims raised in the two cases, consolidation is unwarranted. Indeed, as can be determined from the recitation of the allegations in the Amended Complaint above, the claims set forth by plaintiff in the instant action have little to do with the gender discrimination claims asserted by the plaintiff in *Gavenda.*

In support of the motion for consolidation, Plaintiffs' counsel alleges that "Sidari and Gavenda allege a pervasive policy, practice, custom, and usage of the defendants discriminating because of sex, race, national origin or religion against employees and inmates and retaliating against those persons who complain of this discrimination." (Affirmation of Emmelyn Logan Baldwin dated August 10, 1995 at ¶ 6). While Sidari has alleged a wide-range of discriminatory activities by defendants, the claims raised by the

plaintiff in *Gavenda* allege discrimination solely based on her gender.

Many of the arguments set forth in plaintiff's counsel's affidavit supporting the instant motion focus upon the similarity between *Gavenda I* [4] and *Gavenda II* (Civ. No. 95–251E), rather than the similarities between *Gavenda II* and the instant case brought by Sidari. (See Affirmation of Emmelyn Logan Baldwin dated August 10, 1995 at ¶¶ 9–16, 24–26). When plaintiff does address the alleged "common issues of law and fact" between *Gavenda II* and the instant matter, her allegations fall far short of the threshold needed to warrant consolidation. Among the "common issues" alleged by plaintiff are:

(1) That both Gavenda and Sidari have alleged civil rights violations (Logan Baldwin Affirmation at ¶ 6);

(2) That John Walsh, a defendant in *Sidari,* was appointed to a position that Gavenda alleges should have been given to her (Logan Baldwin Affirmation at ¶ 17);

(3) That both Sidari and Gavenda allege that Sheriff Green discriminates against women (Logan Baldwin Affirmation at ¶ 18);

(4) That Sidari has witnessed defendants' discriminatory acts against women and/or Gavenda (Logan Baldwin Affirmation at ¶¶ 21–23); and

(5) That Sidari alleges the same "modus operandi" as Gavenda (Logan Baldwin Affirmation at ¶ 27).

Consolidation is not warranted merely because two separate plaintiffs allege distinct claims under the same general theory of law or statute. To prove her claim of discrimination based upon her sex, Gavenda must prove a very different set of factual circumstances than Sidari must prove to prevail upon his claim that he has been discriminated against on the basis of his religion and national origin. Indeed, because such claims are so dependant upon the specific factual circumstances alleged in each case, consolida-

---

4. In 1988, plaintiff initiated a similar action in this District Court against Orleans County and others. The action, hereafter referred to as *"Gavenda I"* (Civil No. 88–0408E), was resolved by a Stipulation of Settlement on or about December

18, 1991. The action brought by plaintiff Gavenda currently pending before Judge Elfvin is referred to as *"Gavenda II"* hereinafter when necessary to distinguish it from *Gavenda I.*

tion would often be unwarranted even had both plaintiffs alleged the same general type (i.e. sex, race ... ) of discrimination. Moreover, even if some evidence may be relevant in both cases, that alone, does not warrant consolidation of the two actions. For the same reason, the fact that some of the defendants are common to both cases, or that one of the defendants in Sidari received a job coveted by Gavenda, also fails to warrant consolidation of the two cases. Finally, the fact that Sidari may be a witness to support Gavenda's claims does not warrant consolidation. Sidari can still be a witness on behalf of Gavenda (and vice versa) without consolidation of the two cases.

Moreover, it should be noted that each case includes several defendants who are not named in the other action. The Orleans County Sheriff's Employees' Association, Wayne Littlefield, Joseph Puma, Lawrence Germano, and Jack Englehardt are all defendants in *Gavenda*, but not in the instant action. John Walsh and Sue Emerson are defendants in the instant action but not *Gavenda*. Such differences in parties make consolidation problematic. Under such circumstances consolidation would complicate the judicial proceedings rather than promote judicial efficiency. Consolidation of these two cases would likely create numerous logistical problems regarding the presentation of evidence which may be admissible (or even relevant) in one case, but not the other.

Perhaps most importantly, consolidation of the two cases would likely be overly prejudicial to the defendants. Plaintiffs' counsel seeks to present these cases together as one, asserting that the defendants' combined conduct has created a "hostile work atmosphere." Under the plaintiff's theory, each of the individual defendants would be held responsible to both Sidari and Gavenda even if their particular individual conduct did not discriminate against Sidari because of his religion or national origin or against Gavenda because of her gender. Indeed, under the

theory set forth in the instant case, plaintiff Sidari would be entitled to be compensated if racial discrimination were proven, even if no discrimination against plaintiff on the basis of his religion or national origin were found. A lumping together of such claims, which amounts to guilt by association, would unfairly prejudice the defendants.

Although it is clear that the plaintiffs in each case (Sidari and Gavenda) would like to use each others claims to bolster their own, each lawsuit must stand on its own. While, to the extent allowed under the Rules of Evidence, each plaintiff may attempt to use information from the other case in support of their own claim, the Court is not persuaded that there are sufficient common issues of law and fact to justify consolidation.

Based on the above, plaintiff's motions to transfer this case to Judge Elfvin and for consolidation with *Gavenda v. Orleans County* (Civ. No 251) are denied.

## B. *Motions Relating to Striking Allegations from the Complaint*

Defendants seek to strike all allegations in the complaint relating to alleged race and sex discrimination against or violations of the constitutional rights of inmate or other persons similarly situated or other employees. More specifically, defendants seek to strike paragraphs 13(c), 14, 16, 17, 18, 19, 20, 21, 22, 23, 25, 28, 49, 59 and paragraphs 2(a) and 2(c) in the Prayer for Relief inasmuch as they allege that various defendants deprived inmates at the Orleans County Jail of their constitutional rights and discriminated against them because of their race and color. Defendants argue that plaintiff, who is neither black nor an inmate, lacks standing to assert these claims on behalf of others.[5] Moreover, while the allegations purport to allege these claims on behalf of unnamed persons "similarly situated" plaintiff has not sought to file this action as a class action.

---

**5.** Defendants' motion papers set forth arguments challenging plaintiff's ability to maintain claims of alleged discrimination based upon race or *sex*. With the exception of a conclusory statement in paragraph 16 of the Amended Complaint (which alleges that plaintiff "has been forced to observe" discriminatory conduct against others, including discrimination on the basis of "sex"), the particular allegations sought to be stricken by defendants do not allege discrimination on the basis of sex. Thus, the Court will focus on the plaintiff's standing to allege racial discrimination.

■ Plaintiff argues that defendants' motions are untimely inasmuch as such motions must be made before responding to the pleading. Plaintiff's argument is that many, if not all, of the allegations now sought to be stricken were contained in the original complaint and that the defendants did not move to strike those allegations before filing their original answer. This argument lacks merit. The plaintiff filed a motion to amend the complaint on July 7, 1995. The instant motions to strike were filed in response to plaintiff's motion to amend the complaint. The plaintiff's filing of the Amended Complaint gives the defendants a new opportunity to respond to the amended complaint, to assert new affirmative defenses, counterclaims, to attack the sufficiency of the pleading, or as in this case, to seek to strike portions of the pleading. Thus, the Court finds that the defendants' instant motions are timely.

Plaintiff also argues that the allegations attacked by the defendants may be asserted by plaintiff because he has "the unqualified right to complain of discrimination/retaliation against others because of their national origin, religion, race and/or sex to insure his right to a diverse work environment free of all discrimination/retaliation." (See Plaintiff's Brief Opposing Motion to Strike at page 3).[6]

■ The Court is not persuaded that the applicable law supports such an expansive view of the plaintiff's rights. To the contrary, the applicable case law requires the conclusion that a white male corrections officer lacks standing to maintain a claim of discrimination under Title VII based on conduct by other whites against blacks or inmates. To have standing under Title VII, the plaintiff must be "a person claiming to be aggrieved...." 42 U.S.C. § 2000e–5. While plaintiff may be aggrieved of discrimination

on the basis of this religion and national origin, he cannot, and does not, claim to be aggrieved of discrimination for being a black inmate. *Patee v. Pacific Northwest Bell Telephone Co.*, 803 F.2d 476 (9th Cir. 1986)(male employees could not maintain Title VII action as persons aggrieved because of discrimination against women); *Siegel v. Board of Education of City of New York*, 713 F.Supp. 54 (E.D.N.Y.1989)(male teachers could not maintain Title VII claim for wage discrimination on the grounds that they hold jobs traditionally held by women); *Spaulding v. University of Washington*, 740 F.2d 686 (9th Cir.1984) (valid sex discrimination claim of female nursing school faculty does not allow male nursing school faculty to "bootstrap" a Title VII claim); *AFSCME v. Nassau County*, 664 F.Supp. 64 (E.D.N.Y. 1987) (male plaintiffs can not maintain Title VII claim on the grounds that they are underpaid because they hold jobs traditionally held by women); *Badillo v. Central Steel Wire Co.*, 495 F.Supp. 299 (N.D.Ill.1980) (Spanish surnamed male employee lacks standing to bring Title VII claim on behalf of women or blacks); *Pecorella v. Oak Orchard Community Health Center*, 559 F.Supp. 147 (W.D.N.Y.1982) (male paid a higher wage cannot maintain Title VII action alleging discrimination on basis of sex because he receives more than two female co-employees.)

In the instant case, it is clear from the Amended Complaint, plaintiff's papers in opposition to the instant motion and from counsel's oral argument, that plaintiff's allegations regarding racial discrimination and the improper treatment of inmates are asserted to present independent constitutional claims and not as a basis to establish that plaintiff has been discriminated against because he is Italian or Catholic. Significantly, plaintiff does not base any of his claims upon an

---

6. Plaintiff has filed a "Notice of Motion and Motion to Supplement Record; Expedited Hearing" dated April 22, 1996. The purported purpose of this motion is to include in the record portions of the transcript of the deposition of John Mignano on February 16, 1996. Plaintiff argues that the fact that defendants' counsel asked this witness about the allegations in the Amended Complaint which relate to the treatment of inmates "conclusively establishes" that these issues are relevant. Such an argument is

absurd. Inasmuch as on the date of that deposition, the allegations relating to the treatment of inmates were still a part of the Amended Complaint (and will remain so until and unless the District Court adopts the recommendation herein), defendants' counsel would have been remiss by not inquiring into these allegations.

In light of the above, plaintiff's Motion to Supplement Record; Expedited Hearing dated April 22, 1996, is hereby denied sua sponte.

alleged violation of his First Amendment rights. Plaintiff can not prove his claims of being discriminated on the basis of his religion or national origin by establishing that someone else was discriminated against on the grounds of race or inmate status. In essence, although plaintiff sets forth wide-ranging allegations regarding various types of discrimination, plaintiff can only recover under the civil rights laws if *his* constitutional rights are violated.

Unlike *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), which is cited by plaintiff, this is not a case where the plaintiff can allege a harmful impact because the defendants' conduct prevents plaintiff's association with a protected class. In *Trafficante*, the Supreme Court held that white tenants had standing to bring an action as aggrieved persons as the result of racial discrimination against non-whites in housing because "the alleged injury to existing tenants by exclusion of minority persons from the apartment complex is the loss of important benefits from interracial associations." *Trafficante*, 409 U.S. at 209–10, 93 S.Ct. at 367. More specifically, the plaintiffs in *Trafficante* alleged that they had been injured "in that (1) they had lost the social benefits of living in an integrated community; (2) they had missed business and professional advantages which would have accrued if they had lived with members of minority groups; (3) they had suffered embarrassment and economic damage in social, business and professional activities from being 'stigmatized' as residents of a 'white ghetto.'" *Trafficante*, 409 U.S. at 208, 93 S.Ct. at 366.

In the instant case, plaintiff does not claim any such associational loss. As noted above, plaintiff's allegations of racial discrimination related to the mistreatment of minority inmates. Indeed, as defendants note, plaintiff, as a corrections officer, has a professional obligation not to fraternize with inmates. If plaintiff's allegation that he "was forced to observe"[7] the alleged mistreatment of others is to be accepted as sufficient to provide plaintiff standing to raise Title VII claims based upon such mistreatment of others,

without asserting some associational impact upon plaintiff's own rights, the scope of Title VII would be extended far beyond its limits as interpreted in *Trafficante*. Thus, *Trafficante* is not applicable under the facts of the instant case. See *Patee v. Pacific Northwest Bell Telephone Co.*, 803 F.2d 476, 478 (9th Cir.1986).

The other cases cited by plaintiff are similarly inapposite inasmuch as they involved claims of discrimination based upon the plaintiff's association with a minority class. (i.e. *Equal Employment Opportunity Commission v. Bailey Co, Inc.*, 563 F.2d 439 (6th Cir.1977) (white plaintiff allowed to bring action claiming racial discrimination for loss of benefits from association with racial minorities at work); *Holiday v. Belle's Restaurant*, 409 F.Supp. 904 (W.D.Pa.1976) (white woman allowed to bring claim of being discriminated against because she was married to a black man)).

Furthermore, plaintiff can not maintain such constitutional claims under the other civil rights statutes asserted in the Amended Complaint. To have standing to assert such claims, the plaintiff must allege "a violation of his or her own, not a third party's, rights." *Application of Dow Jones & Co. Inc.*, 842 F.2d 603 (2d Cir.1988). As noted above, under the theory set forth by the plaintiff, he would be entitled to be compensated if racial discrimination against inmates were proven, even if religious or ethnic discrimination against the plaintiff himself were not found to exist. Such a disposition is not supported by any authority presented to the Court.

Under such circumstances, it is appropriate to strike those allegations which relate to claims that can not be maintained by plaintiff. *Linskey v. Heidelberg Eastern Inc.*, 470 F.Supp. 1181 (E.D.N.Y.1979); *Badillo v. Central Steel Wire Co.*, 495 F.Supp. 299 (N.D.Ill.1980). Striking such allegations will focus the issues to be tried in this case and avoid unnecessary discovery.

The Motion to Strike these allegations is tantamount to a motion to dismiss some of the claims asserted by Sidari purportedly on behalf of himself and other persons. Thus,

---

7. See plaintiff's Amended Complaint at ¶ 16.

to this extent the motion seeks dispositive relief. Reviewing the suspect allegations in light of the applicable law, this Court recommends as follows:

**Paragraph 13:** The phrase "and other persons similarly situated" and the word "race" should be stricken from both ¶ 13(a) and (b), ¶ 13(c) should be stricken in its entirety;

**Paragraph 14:** The phrase "and other persons similarly situated" and the phrase "and/or jail inmates" should be stricken;

**Paragraph 16:** The last three sentence; should be stricken;

**Paragraphs 17 through 23, and 25:** Each of these paragraphs should be stricken in its entirety;

**Paragraphs 28 and 49:** No redactions are necessary with respect to these paragraphs;

**Paragraphs 59:** The phrase "and minority inmates" should be stricken;

**Paragraph 2(a) of the Prayer for Relief:** The word "race", the phrase "and other persons similarly situated" and the phrase "or from continuing to abuse inmates and/or deny them their civil rights" should be stricken;

**Paragraph 2(c) of the Prayer for Relief:** The phrase "and similarly situated persons and inmates" should be stricken.

Consistent with Rule 15 of the Federal Rules of Civil Procedure, the defendants shall file answers to the so redacted Amended Complaint within 10 days of the date of the District Court's order affirming or rejecting this Report & Recommendation, unless otherwise directed in the District Court order.

### C. Motion of Norvin Fowlks to Intervene

■ Norvin Lee Fowlks, a former inmate at the Orleans County Jail, seeks to intervene in this action.[8] In a proposed complaint, Fowlks alleges a civil rights claim under 42 U.S.C. § 1983 as well as a violation of Article I, § 5 of the New York State Constitution which protects citizens from cruel and unusual punishment. Named as proposed defendants in the Fowlks action are Orleans County, the Orleans County Sheriff's Department, Orleans County Sheriff David Green, Captain Charles Dingman, Deputy Sheriff John Walsh, and two "John Does". With the exception of the "John Does," whose identity are, of course, unknown, all of the above are defendants named in Sidari.

Fowlks argues that he should be allowed to intervene in the instant case as a matter of right under Rule 24(a) "because the Sidari and Gavenda cases pending before the court impact on Mr. Fowlks claims." (Affirmation of Harriet L. Zunno dated September 28, 1995 at ¶ 9.) Fowlks argues that "[h]ad the defendants abided by Judge Elfvin's order in Gavenda I, and stopped the discrimination/retaliation and eliminated the hostile work environment, there would be no Gavenda II, no Sidari, and no need for Mr. Fowlks to complain. There would have been no new discrimination/retaliation against Lt. Gavenda or and discrimination/retaliation against C.O. Sidari; Mr. Fowlks would not have been abused while incarcerated because of his race." (Affirmation of Harriet L. Zunno dated September 28, 1995 at ¶ 10).

Such statements are highly speculative, at best. Gavenda I concerned only a sex discrimination claim by one Orleans County Sheriffs Department employee. The Consent Decree that resolved that action did not address the conditions or treatment of inmates at the Orleans County Jail. Factually, there is no relationship between the Consent Decree in Gavenda I and the treatment of Fowlks as an inmate. Although Sidari sets forth in his complaint allegations concerning the treatment of Fowlks in support of the claims raised in the instant matter[9], as a matter of law, there is no interdependence between the claims asserted by Sidari, and those asserted by Fowlks. Whether or not Sidari prevails in the instant action has no bearing on Fowlks legal rights. Nor would any issues resolved in the instant action be

---

**8.** Fowlks has filed a similar motion seeking to intervene in Gavenda v. Orleans County, Civ. No. 95–251. That motion was denied by Hon. John T. Elfvin in an Order dated April 15, 1996.

**9.** As discussed above, this Court has recommended that the allegations which attempt to set forth a claim regarding the treatment of Fowlks be stricken from the Amended Complaint.

res judicata with respect to Fowlks claims. Pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, absent a statutory right to intervene (which is not present in this case), intervention as of right shall be granted only:

[W]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fowlks has not met the necessary threshold to be entitled to intervention as of right.

■ As an alternative argument, Fowlks asserts that he should be allowed permissive intervention in the instant action pursuant to Rule 24(b) because of "common questions of law or fact." (Affirmation of Harriet L. Zunno dated September 28, 1995 at ¶ 13).

As noted above, this Court has recommended that the allegations which relate to the treatment of Fowlks be stricken from the Amended Complaint. Even if those allegations were not to be stricken, permissive intervention would not be warranted. Fowlks' proposed complaint alleges cruel and unusual punishment in violation of his Eighth Amendment rights. Sidari's Amended Complaint alleges employment discrimination on the grounds of his religion and national origin. Although Sidari asserts that the defendants' treatment of black inmates, such as Fowlks, is relevant to his discrimination claims, Sidari need not prove those allegations to prevail upon his claims that he has been discriminated against because of his religion or national origin. The issues relating to the treatment of inmates are not essential legal or factual elements of Sidari's claims. Similarly, Fowlks makes no claim to being Catholic or Italian or that he has been discriminated against because of those grounds.

The fact that plaintiff may attempt to introduce evidence relating to the treatment of Fowlks at trial in the instant matter does not create "common issues of law or fact" warranting intervention. As discussed above, the resolution of plaintiff's claims in the instant matter will in no way impact Fowlks' rights. Intervention by Fowlks would not serve the purposes of judicial economy. To the contrary, such intervention would needlessly complicate the trial in this matter and unfairly prejudice the defendants.[10] Thus, the Court is not persuaded that sufficient questions of law and fact exist to grant permissive intervention.

### D. Plaintiff's Motion to Extend Discovery Deadline

Plaintiff seeks an extension of the discovery cut-off date, currently May 10, 1996, to September 3, 1996. The defendants oppose any extension.

Plaintiff argues that the extension is necessary because of a lack of cooperation on the part of defendants' counsel. The Court is of the opinion that the delay may be equally attributed all counsel. The Court is, however, encouraged by recent evidence that counsel can work together in a reasonable manner to resolve any remaining issues and to complete discovery expeditiously. To facilitate this effort, the Court hereby extends the discovery period to June 28, 1996. The Court wishes to emphasize that *no further extensions* of this discovery deadline will be granted.

### E. Motions Relating to the Continuation of the Deposition of Plaintiff

■ Plaintiff's deposition was commenced on June 28, 1995 and was continued on several days in November 1995. In total, plaintiff has submitted to approximately 6 days of

---

**10.** Fowlks also argues that intervention should be allowed because he is poor and intervention will allow him to take advantage of the resources of the other parties in the instant action. Absent grounds warranting intervention under Rule 24, an intervenor's financial status is irrelevant. It should be noted that Fowlks may be eligible for *in forma pauperis* status. Moreover, if relevant evidence is adduced in connection with the instant matter, even without intervention Fowlks may be able to use such information in any independent lawsuit with respect to his own claims.

deposition. Plaintiff seeks a protective order contending that six days was enough and that defendants should be prohibited from continuing the deposition. Plaintiff claims the continuing deposition is another form of retaliation for having brought this action. In particular, plaintiff alleges that defendants have discriminated against him in connection with the deposition by failing to arrange coverage for his shifts on the days of the depositions.

Defendants move to compel the continued deposition of plaintiff. The Orleans County Defendants [11] contend that the only reason for the extenuated deposition is plaintiff's non-responsiveness and the "obsteporousness of his counsel." (Affidavit of Colleen O'Connell Jancevski dated April 9, 1996 at ¶ 5). The remaining individual defendants also oppose plaintiff's motion for a protective order noting that, although they have cross-noticed plaintiff, they have not yet had their opportunity to ask any questions of the plaintiff.

This is not the first time plaintiff has attempted to limit the defendants' ability to depose him regarding the claims asserted in this action. Indeed, at the start of the Sidari deposition (noticed by the Orleans County Defendants), plaintiff's counsel advised Josephine Greco, Esq., counsel for the remaining individual defendants, that she could not ask questions at this deposition. Plaintiff's counsel then filed a motion for a protective order seeking a ruling that plaintiff should not have to be subjected to another deposition "by attorneys for different defendants." (See Affidavit of Josephine Greco dated April 9, 1996 at ¶ 10.) Ms. Greco asserts that Magistrate Judge Edmund F. Maxwell denied plaintiff's motion and directed that Ms. Greco be permitted to depose plaintiff upon completion of the questioning by counsel for the Orleans County Defendants. (See Affidavit of Josephine Greco dated April 9, 1996 at ¶ 12.) Although Magistrate Judge Maxwell's August 24, 1995 Order denied plaintiff's motion for a protective order as being moot, plaintiff's counsel has not disputed the assertions by defendants' counsel.

Plaintiff's Amended Complaint sets forth 146 separate paragraphs alleging a wide-range of allegedly improper activities by the defendants. Given the wide-range of allegations in the Amended Complaint, and the number of issues raised by the plaintiff, it is not surprising that an extended deposition of the plaintiff has been necessitated. The Court declines to review the transcript of the deposition line by line to determine whether a repetitive question is being posed, whether plaintiff's counsel is being obstructive. or whether the witness is being evasive. It behooves all concerned, counsel and parties, to cooperate with each other to complete plaintiff's deposition as expeditiously as possible.

Thus, in light of the above, the Court directs that the deposition of the plaintiff shall continue and that Ms. Greco, as counsel for the individual defendants. shall have an opportunity to depose the plaintiff at the conclusion of the questioning presented by counsel for the Orleans County Defendants. As directed by Magistrate Judge Maxwell in his August 24, 1995 Order, under the circumstances presented in this case, it is appropriate to complete the deposition of the plaintiff before commencing the deposition of any other party. See Magistrate Judge Edmund F. Maxwell's August 25, 1995 Order at ¶ 4. Counsel for the Orleans County Defendants should be mindful not to ask repetitive questions; counsel for plaintiff should be mindful not to obstruct the deposition and to object only as to the form of a question; the witness should be reminded to respond to questions in a direct, non-evasive manner; and counsel for the remaining defendants should avoid, wherever possible, questioning plaintiff. on issues fully covered by counsel for the Orleans County Defendants.

F. *Motions Relating to the Scheduling of Depositions*

Plaintiff seeks a protective order prohibiting defendants from continuing with non-party depositions which she alleges she can not attend due to scheduling concerns. (# 85 and # 86) Plaintiff had filed a similar mo-

---

11. The "Orleans County Defendants" refers to defendants Orleans County, Orleans County Sheriff Department, David M. Green and Richard Metz.

tion on October 4, 1995. (# 65) That motion was adjourned *sine die* by Magistrate Judge Maxwell. Inasmuch as the October 4, 1995 motion is subsumed within the February 13, 1996 motion for a protective order, it is hereby deemed to be moot.[12]

By way of cross-motions, defendants seek an order compelling plaintiff to attend or forfeit the right to attend the depositions and to refrain from obstructing the taking of the non-party depositions (# 105).

At the Court's urging, counsel consulted with each other at the conclusion of the oral argument, and have subsequently advised the Court that they had come to an agreement with respect to the scheduling of many of the remaining depositions. The Court has received correspondence from both plaintiff's counsel Emmelyn Logan Baldwin and defendants' counsel Colleen O'Connell Jancevski (both dated April 18, 1996) regarding the discussions between counsel. Based upon these letters, it appears that the parties have agreed to set aside the following dates for deposition is this matter: May: 13, 24, 28; June: 3, 10, 11, 19, 21, 24, 26, and 27. It also appears that one or both of the defendants' counsel can have another attorney "cover" for them so that May 22, June 4, 12, and 25 can be used for depositions. The Court hereby incorporates these fifteen agreed upon dates and directs that these dates be used for the taking of depositions in this matter.

In her April 8, 1996 letter, plaintiff's counsel represents that the parties agree that the remaining depositions may take as many as 32 days to complete. Thus, it appears that an several additional dates must be designated if the parties are to complete all of the anticipated depositions. This assessment, however, may be subject to revision in light of the Court's recommendations with respect to the defendants' Motion to Strike certain allegations from the Amended Complaint. Notwithstanding such reassessment, it is apparent that at least some additional days must be designated if discovery is to be completed by June 28, 1996.

It is equally apparent that the parties can not agree as to any additional dates within this time period. In an attempt to broaden the number of available days, defendants' counsel have proposed conducting depositions on Saturdays. The Court understands that this possibility was previously urged by Magistrate Judge Maxwell. Plaintiff's counsel objects to scheduling any depositions on Saturdays citing family obligations.

The court is all too familiar with the time pressures faced by attorneys and parents. However, the progress of a case cannot be held hostage by the personal schedule of one attorney. This case has languished, largely because of the inability of counsel to cooperate with each other. Although most attorneys (and Judges) would like to reserve weekends as time off, more than occasionally it is necessary to work on weekends so that a matter can be handled expeditiously. Under the circumstances present in this case, the Court finds that it is reasonable and necessary to direct that the parties utilize the Saturdays between the date of this order and June 28, 1996 to facilitate the completion of depositions. Thus, the Court hereby directs that May 4, 11, 18, 25 and June 1, 8, 15, 22 be utilized as dates upon which depositions can be conducted in this matter. In light of the Court's above determinations and recommendations which may have focused the issues in this case, it is the Court's hope that these additional dates, together with the dates agreed upon by the parties, will be sufficient to complete all of the needed depositions. If the parties believe further additional dates are required, counsel are strongly urged to find mutually acceptable additional dates. Any request made to this Court to find additional dates within the discovery period may be looked upon harshly, and may be resolved similarly.

### G. *Motions Relating to the Production of Documents*

Plaintiff seeks to compel production of documents to Request Nos. 1–9, 19–21, 23, 32,

---

**12.** The court has considered the arguments set forth in support of the October 4, 1995 motion as being made in support of the instant motion.

52, 58 and 60 of a Notice to Produce dated May 19.1995 and Request Nos. 2, 5 and 14 of the Notice to Produce dated July 7, 1995. The Orleans County Defendants have filed a cross-motion seeking a protective order regarding these requests.

*The May 19, 1995 Requests*

**Request No. 1:**

■ Plaintiff seeks production of the personnel files of 21 Orleans County Sheriff's Office employees. The defendants argue that these files are "confidential" pursuant to § 50–a of the New York Civil Rights Law. Section 50–a, however, does not act as an absolute bar to disclosure in federal court civil rights actions. See *Martin v. Lamb,* 122 F.R.D. 143, 146 (W.D.N.Y.1988). That does not mean that the state statute is to be given no effect. According to the New York State Court of Appeals, the legislative intent underlying the enactment of § 50–a was to prevent time consuming and perhaps vexatious investigation into irrelevant collateral matters in the contest of a civil or criminal action and to avoid embarrassment and harassment of testifying officers by cross-examination concerning "unsubstantiated and irrelevant" matters in their personnel files. See *Matter of Capital Newspapers v. Burns,* 67 N.Y.2d 562, 505 N.Y.S.2d 576, 496 N.E.2d 665 (1986). Thus, some courts have ordered an *in camera* review of the materials to determine whether or not disclosure is warranted. *Martin v. Lamb,* 122 F.R.D. 143, 146 (W.D.N.Y.1988).

In the instant case, plaintiff's motion papers fail to articulate a specific need for these files. Although § 50–a does not bar disclosure of such personnel records, the spirit and purpose of the statute are to be given some weight. Production of such documents containing intimately personal information about individuals, most of whom are not parties to this lawsuit, is warranted only when the party seeking the information articulates a specific need for the information.

Therefore, the instant motion is denied without prejudice to the extent plaintiff seeks the personnel files. To facilitate the matter, any further notion by plaintiff seeking production of the personnel files, in the event plaintiff decides to make such a motion, shall be supported by a list of the individuals whose personnel files are requested and a detailed description of the individual's relationship to this case, if any. Plaintiff shall also set forth a particularized statement of the specific information sought from each individual's personnel file and why that information is relevant to plaintiff's claims in this action. Given the fast approaching discovery deadline, if plaintiff determines to file such a motion, the following schedule shall apply: Plaintiff shall file any such motion on or before **May 17, 1996;** Defendants shall respond on or before **May 31, 1996.** There shall be no reply papers filed. In addition, pursuant to Rule 7 of the Local Rules of the Western District of New York, the Court declines to hear further oral argument on this issue.

**Requests 2–9:**

■ These requests seek documents relating to the treatment of inmate Norvin Fowlks and other inmates. As discussed above, the Court is not persuaded that the allegations relating to the treatment of Fowlks are relevant to whether or not plaintiff was discriminated against because he is Italian or Catholic. Even as they pertain to the plaintiff's claim that he has been discriminated against because he has complained about the discriminatory treatment of others, presuming such a claim is actionable, these requests are far too broad and overly burdensome.

**Requests 19, 21, 23, 60:**

These requests seek various work schedules including Zina Baker (No. 19); conversations between defendants Metz and Green (No. 21): documents relating to the plaintiff complaining to defendant Green about his treatment at work (No. 23) and documents relating to any affirmative action program from 1985 to present With respect to Request Nos. 19, 21 and 23, notwithstanding their objection to these requests as being too vague, burdensome or on relevance grounds, in the spirit of cooperation, defendants have stated that they will produce any responsive documents. Thus, no judicial intervention is required with respect to these requests. With respect to Requests No. 60, notwith-

standing similar objections, the defendants have stated that they will produce any such documents from 1990 to date. Plaintiff has articulated no reason why this would not be sufficient. Thus, the Court directs that such a response is sufficient.

**Request 20:**

The request seeks documents relating to an alleged order to remove Zina Baker's name from the work schedule. Defendants state that no responsive documents exist. This response is sufficient.

**Requests 32, 58:**

Request No. 32 seeks documents relating to the work rotation of the Orleans County Jail. Request 58 seeks EEO–1 reports. Defendants state that all responsive documents have already been produced to plaintiff. Plaintiff has articulated no reason why this would not be sufficient. Thus, the Court directs that such a response is sufficient.

**Request 52:**

 Plaintiff seeks documents relating to the work attendance of defendants Dingman and Walsh. Defendants objected to this request on the grounds that the request is broad, vague and irrelevant. Plaintiff has failed to articulate the relevance, or any particularized need for these documents. However, inasmuch as these records are relevant to whether defendants Dingman and Walsh were at work on the dates of the incidents alleged in the Amended Complaint, the Court directs that the documents be produced.

*July 7, 1995 Requests*

**Request 2:**

Plaintiff seeks documents relating to an investigation of the conditions at the Orleans County Jail. Notwithstanding their objection to this request as being too vague, burdensome or on relevance grounds, in the spirit of cooperation, they will produce any responsive documents. Thus, no judicial intervention is required with respect to this request.

**Request 5:**

Plaintiff seeks Orleans County Jail Incident Reports from 1990 to date of trial. Defendants object to this request as overly broad and burdensome as it would require review of over 12,400 inmate files and would amount to between 4380 to 13,140 documents. Once again, this request seeks documents relating to the treatment of inmate Norvin Fowlks and other inmates. As discussed above, the Court is not persuaded the allegations relating to the treatment of Fowlks or other inmates is relevant to whether or not plaintiff was discriminated against because he is Italian or Catholic. Thus, the defendants need not respond to this request.

**Request 14:**

Plaintiff seeks documents relating to the termination of his health insurance benefits. Notwithstanding their original objection to this request, defendants state that in the spirit of cooperation they will produce any responsive documents. Thus, no judicial intervention is required with respect to this request.

In addition, by way of a supplemental affidavit, plaintiff seeks production of gaps (certain days between March 7, 1989 to January 20, 1993) in the log books that were previously produced by defendants. Defendants do not respond to this request in their papers. To the extent such documents exist, these documents should be produced.

### H. *Motions Relating to the Physical and Mental Examination of Plaintiff*

Defendants have moved for an order compelling plaintiff to submit to mental and physical examinations. Plaintiff has filed a cross-motion for a protective order. Plaintiff argues that such examinations should not be ordered, and if such examinations are ordered, certain safeguards should be implemented.

Rule 35(a) of the Federal Rules of Civil Procedure provides that when the mental or physical condition of a party is in controversy, the court may order the party to submit to a physical or mental examination upon good cause being shown. As is evident in paragraphs 42, 52, 63, and 102 of the Amended Complaint, plaintiff concedes that he has put his physical and mental health in controversy. Notwithstanding, plaintiff argues that the defendants' have failed to meet the

threshold of Rule 35 and that good cause has not been shown. The focus of plaintiff's argument, however, appears to be directed toward the mechanics of any examinations and not upon whether the defendants' have a need to have plaintiff examined. In any event, the Court is not persuaded by plaintiff's arguments and finds that defendants' have met the Rule 35(a) threshold. See *Duncan v. Upjohn Co.*, 155 F.R.D. 23 (D.Conn.1994).

■ Plaintiff also argues, in somewhat conclusory fashion, that if the Court were to order the examinations, it is necessary to implement "safeguards" with respect to the examination.[13] Plaintiff fails to articulate any specific concern other than the assertion that doctors, in general, are lousy note takers. Plaintiff argued that a "verbatim" record as taken by a stenographer would be required to insure that her rights were not violated. While it is true that an expert retained by one party to a lawsuit can not be deemed to be "neutral", plaintiff's fears appear to be overstated. The defendants argue that sufficient safeguards are already in place under Rule 35(b), which allows for the examined party to receive a copy of any report produced by the expert, and in the general discovery rules which allow for plaintiff to take the deposition of the expert.

There does not appear to be any well-settled law either requiring or prohibiting the recording of such examinations. Some courts have directed the recordation of such examinations. See *Zabkowicz v. West Bend Co.*, 585 F.Supp. 635 (E.D.Wis.1984). As a general rule, the safeguards in Rule 35(b) and the general discovery rules are sufficient to protect a party's rights. However, the Court is not persuaded by defendants' argument that the presence of a tape recorder would "destroy any candor" by the plaintiff and subvert the entire purpose of the examination. Being an interpersonal exchange between two persons, there is by definition, a subjective component to a psychiatric examination. Thus, although it may not be required as a matter of law, the Court will

direct that the mental examination be recorded by a mechanical audio tape recorder.

■ Finally, plaintiff argues that he should be paid for his time in submitting to the examinations and in otherwise participating in the prosecution of this lawsuit. Plaintiff argues that because the individual defendants who are employees of Orleans County or the Orleans County Sheriff's Office are paid when their presence is required at court proceedings or depositions, it is retaliatory not to pay the plaintiff when his presence is necessitated.

Plaintiff's motion is denied. The defendants' in this case have been sued in their official capacities as County employees as well as in their individual capacity. Their cooperation in the defense effort of the County is required by statutory provisions concerning the representation and indemnification of government employees in such circumstances. These considerations do not apply to the plaintiff. Thus, plaintiff's request for compensation for the time expended in submitting to the examinations or otherwise participating in this lawsuit is denied. See *Sands v. Runyon*, 28 F.3d 1323 (2d Cir.1994) (the Second Circuit upheld the District Court's *denial* of reimbursement of leave time taken by the plaintiff to participate in the prosecution of her lawsuit).

### Conclusion

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motion to Consolidate this Case with *Gavenda v. Orleans County* (Civ. No. 95–251) (# 48); and Plaintiff's Motion to Transfer the Case to Judge Elfvin (# 72) are **DENIED;** Plaintiff's Motion to Supplement Record; Expedited Hearing dated April 22, 1996, is hereby **DENIED SUA SPONTE;**

2. Plaintiff's Motion to Extend Discovery Deadline (# 124) is **GRANTED;**

3. Plaintiff's Motion for a Protective Order limiting the deposition of plaintiff (# 75) is **DENIED** and Orleans County Defendants' Cross–Motion to Compel the continuation of the plaintiff's deposition (# 113) is **GRANTED;**

---

13. In this regard, plaintiff addressed only the mental examinations and does not appear to

desire recordation of the physical exam.

4. Plaintiff's Motion for a Protective Order dated October 4, 1995 (# 65) and Plaintiff's Motion for a Protective Order dated February 9.1996 (# 85) are is **DENIED AS MOOTED** by Plaintiff's Amended Motion for a Protective Order dated February 12, 1996 (# 86);

Plaintiff's Amended Motion for a Protective Order dated February 12, 1996 (# 86) and Orleans County Defendants' Cross–Motion to Compel (# 105) are **DENIED IN PART AND GRANTED IN PART** as discussed above;

5. Plaintiff's Motion to Compel the Production of Documents (# 81) and Orleans County Defendants' Cross–Motion for a Protective Order (# 10) are **DENIED IN PART AND GRANTED IN PART** as discussed above;

6. Orleans County Defendants' Motion to Compel Mental and Physical Examination of Plaintiff (# 95); Defendant Dingman's Motion to Compel Mental and Physical Examination of Plaintiff (# 102) and Plaintiff's Cross–Motion for a Protective Order (# 127) are **DENIED IN PART AND GRANTED IN PART** as discussed above.

### REPORT & RECOMMENDATION

Based on the forgoing, this Court recommends that Orleans County Defendants' Motion to Strike (# 55) and Defendant Dingman's Motion to Strike (# 58) be **GRANTED** as discussed above. The Court also recommends that the Motion of Norvin Fowlks to Intervene (# 64) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b) and WDNY Local Rule 72(a)(3).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO AP-PEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d Cir.1995); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72(a)(3) may result in the District Court's refusal to consider the objection.*

So ordered.

Dated: Buffalo, New York
April 29, 1996